**Certiorari Granted, September 23, 2016, No. S-1-SC-36062**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2016-NMCA-085**

**Filing Date:  July 27, 2016**

**Docket No. 33,691**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellee,**

**v.**

**JESUS M. CASTRO,**

    **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Kenneth H. Stalter, Assistant Attorney General
Albuquerque, NM

for Appellee

McGraw & Strickland, LLC
Margaret Strickland
Las Cruces, NM

for Appellant

## OPINION

**GARCIA, Judge.**

**{1}** This case presents a unique appellate circumstance where Defendant's assertion of a constitutional violation of his right to a speedy trial is interrelated and potentially dependent upon his constitutional claim of ineffective assistance of counsel. Defendant appeals the district court's denial of his post-conviction motion to dismiss the indictment on

speedy trial grounds, as well as his motion for a new trial challenging the effectiveness of his counsel under the Sixth Amendment. Because Defendant has established a prima facie factual basis to support a hearing regarding whether his trial counsel was ineffective by failing to sufficiently assert and preserve his right to a speedy trial under the Sixth Amendment, we reverse the denial of Defendant's post-trial motion for reconsideration and remand this case back to the district court for an evidentiary hearing.

**BACKGROUND**

**{2}** On February 9, 2009, the State charged Defendant by criminal complaint in Doña Ana County Magistrate Court with two counts of criminal sexual penetration in the third degree, in violation of NMSA 1978, Section 30-9-11(F) (2009). Defendant was arraigned and released on conditions after providing a secured bond of $20,000. On February 19, 2009, attorney Jonathan H. Huerta entered his appearance on Defendant's behalf. On May 28, 2009, Defendant was identically charged by indictment in Doña Ana County district court. The State dismissed its complaint in magistrate court the next day.

**{3}** Defendant was arraigned in district court on June 15, 2009, and was ordered to adhere to the same conditions of release and maintain the same bond amount set by the magistrate court. On August 4, 2009, prior to the December 1, 2009, trial setting previously ordered by the district court, the State filed a "motion to determine counsel" because no attorney had entered an appearance on Defendant's behalf in district court.

**{4}** On November 23, 2009, Defendant's same attorney, Mr. Huerta, formally entered his appearance on Defendant's behalf in district court. That same day, the State filed a motion to continue the trial setting, noting Mr. Huerta's failure to file an entry of appearance until November 23, 2009, and the State's case agent's unavailability due to a pre-planned vacation. Additionally, the State reminded the district court that Defendant was not being held in custody pending trial. Defendant did not oppose the State's request, and two days later filed his own motion to continue. In it, Defendant stated that his attorney, Mr. Huerta, had only recently become aware of the court's trial setting, and that a "key" character witness would not be able to attend the scheduled trial. The district court granted both motions to continue and reset the trial for January 21, 2010.

**{5}** That same day, November 23, 2009, the State filed a petition to extend Rule 5-604 NMRA's six-month deadline for conducting a trial (the six month rule was withdrawn after our Supreme Court's ruling in *State v. Savedra*, 2010-NMSC-025, 148 N.M. 301, 236 P.3d 20). Defendant did not oppose the motion, which the district court granted in an order extending the deadline for holding a trial to June 15, 2010. A week later, the district court entered an order moving the trial from January 21, 2010, to April 7, 2010.

**{6}** As scheduled, Defendant was tried before a jury on April 7, 2010, but the trial resulted in a hung jury. After declaring a mistrial, the district court entered an order setting a second trial on September 29, 2010.

**{7}** On September 10, 2010, Defendant's attorney filed a motion to withdraw as counsel or in the alternative to have Defendant declared indigent, and offered to accept the district court's appointment to represent Defendant as a contracted public defender. At the time, Defendant had only paid $4,000 of the agreed-to $11,000 retainer for representation by Mr. Huerta in the first trial. Defendant's attorney hoped "that the county may assist [Defendant] in defraying the costs of providing for a legal defense."

**{8}** On September 27, 2010, the district court held a hearing on Defendant's attorney's motion to withdraw. Afterward, the district court orally denied the motion, citing the court's standing policy of refusing to entertain motions to withdraw and permitting only motions to substitute. The next day, the State filed a motion to continue the September 29 trial setting. As grounds, the State mentioned the court's denial of Mr. Huerta's motion to withdraw, and announced the unavailability of its own DNA analyst. Defendant did not oppose the State's motion and it was granted by the district court. Trial was reset for November 30, 2010.

**{9}** November 30, 2010, came and went. Due to a scheduling error, there was neither a trial nor any order by the district court setting a new trial date. The district court docket lacks entries between November 30, 2010, and February 17, 2011, when the State filed a notice of substitution of counsel. Nor is there anything in the record that suggests an explanation for this period of delay. The first mention within the record regarding the delay appears in the district court's June 27, 2013, order denying Defendant's motion to dismiss on speedy trial grounds, in which the district court found that the November trial date had been vacated, but explained that the court simply neglected to set another trial date. In the same order, the district court also faulted the State for failing to request a new trial setting.

**{10}** The record next reveals that on February 22, 2012, the district court set a new trial for July 11, 2012, nearly twenty months after the previous trial setting. On May 30, 2012, Defendant's attorney filed a renewed motion to withdraw and a separate request seeking a hearing on the motion to withdraw. As grounds, Defendant's attorney reiterated Defendant's failure to pay the full $11,000 retainer for the first trial. Also, Defendant's attorney raised for the first time Defendant's "fail[ure] to keep in contact with the undersigned attorney[,] hindering the attorney's ability to prepare for trial."

**{11}** On June 19, 2012, the district court held a hearing on Mr. Huerta's renewed motion to withdraw. Although Defendant attended the hearing in person, Defendant's attorney failed to appear. The district court denied the motion, citing Defendant's attorney's absence and again noting the district court's policy of refusing to entertain motions to withdraw without substitute counsel having already entered an appearance. The district court encouraged Defendant to apply to the public defender's office for a substitute attorney.

**{12}** On July 11, 2012, the day of trial, the district court called Defendant's case but did not select a jury or hold a trial. Instead, a different judge sitting in for the assigned district judge heard further argument concerning Mr. Huerta's motion to withdraw. Mr. Huerta reiterated his desire to withdraw from representing Defendant and also stated that he had

been unable to contact Defendant, who was also present at the hearing. The district court then admonished Defendant to stay in contact with his attorney, noting that regular contact with his attorney was part of Defendant's conditions of release. The substitute judge also stated that he would relay the case's status to the original trial judge, and that he was "pretty sure [the original judge] is gonna set this case relatively quickly in his calendar" because the case was already "relatively old."

**{13}** On September 25, 2012, the district court set another hearing for October 17, 2012, on Mr. Huerta's motion to withdraw. On the same day, the district court also set a new trial date for December 5, 2012.

**{14}** Neither Defendant, nor his attorney, appeared at the new October 17 hearing. The district court saw no indication in the file that the September 25, 2012, notice was sent to Defendant, but nonetheless issued a bench warrant for Defendant's arrest because it "believed" that Defendant must have been notified.

**{15}** The district court held a status conference on October 18, 2012, and both Defendant and his attorney appeared. The court again orally denied Mr. Huerta's motion to withdraw. The court also withdrew the warrant for Defendant's arrest after Defendant explained why he did not appear at the previous day's hearing.

**{16}** Defendant's second trial proceeded as scheduled on December 5, 2012. The jury acquitted Defendant of the first count in the indictment and convicted him on the second count. Afterward, Defendant obtained substitute counsel and on April 19, 2013, filed a motion to extend the time to file a motion for a new trial. On April 24, 2013, Defendant filed a motion to dismiss on speedy trial grounds.

**{17}** On June 27, 2013, the district court denied Defendant's motion to dismiss. The district court found that the three year, ten-month delay from the date Defendant was arrested (February 6, 2009) and the second trial (December 5, 2012) triggered a speedy trial analysis, but that Defendant's constitutional right to a speedy trial was not violated after applying the four-factor analysis set out in *Barker v. Wingo*, 407 U.S. 514 (1972).

**{18}** On July 31, 2013, Defendant filed a motion to reconsider the denial of his motion to dismiss, attaching a supporting affidavit signed by Defendant. The district court denied Defendant's motion to reconsider on August 1, 2013. On April 14, 2014, the district court sentenced Defendant. This appeal timely followed.

**DISCUSSION**

**{19}** Defendant raises several arguments on appeal. We focus on the argument that requires this Court to address a potentially overlapping interrelationship between two separate protections under the Sixth Amendment, the right to a speedy trial and the right to effective assistance of counsel. Specifically, we address ineffective assistance of counsel as

4

it relates to Mr. Huerta's action to preserve Defendant's assertion of his right to a speedy trial, and whether Mr. Huerta's complete failure to ever assert Defendant's right to a speedy trial would collaterally impact the *Barker* analysis in this case. *See* U.S. Const. amend. VI. We begin our analysis by addressing the four speedy trial factors under *Barker*, without consideration of whether Mr. Huerta's representation impacts the speedy trial determination by the district court. We then address the ineffective assistance of counsel claim regarding Mr. Huerta's representation and how it could affect the ultimate speedy trial outcome in this case.

## A.      Defendant's Right to a Speedy Trial

**{20}**     "In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]" U.S. Const. amend. VI. We analyze whether Defendant's right to a speedy trial was violated by applying the four *Barker* factors: "(1) the length of delay [between arrest and trial], (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant that, on balance, determines whether a defendant's right to a speedy trial has been violated." *State v. Garza,* 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted).

**{21}**     The *Barker* factors "are interrelated and must be evaluated in light of other relevant circumstances in the particular case. No one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial." *State v. Johnson*, 2007-NMCA-107, ¶ 5, 142 N.M. 377, 165 P.3d 1153 (internal quotation marks and citation omitted). When an appellate court reviews a district court's denial of a motion to dismiss on speedy trial grounds, it must defer to the district court's factual findings. *Id.* But the appellate court must "independently evaluate the four *Barker* factors to ensure that the constitutional right has not been violated." *Id.*

### 1.      The Extraordinary Length of Delay and its Implications

**{22}**     The length of delay separating a defendant's arrest and trial is both a threshold determinant of the need for a speedy trial analysis in the first instance and substantive evidence of whether a defendant's speedy trial right was violated in the second. *State v. Stock*, 2006-NMCA-140, ¶ 13, 140 N.M. 676, 147 P.3d 885. As to the initial threshold determination, the passage of time between arrest and trial that is necessary to trigger further scrutiny depends on the complexity of the case. *Garza*, 2009-NMSC-038, ¶ 48. For simple cases, one year of delay requires further analysis. *Id.* For cases of intermediate complexity, the period is fifteen months. *Id.* For complex cases, eighteen months of delay is required. *Id.* Here, the district court did not assess whether this case was simple, intermediate, or complex because the length of delay was quite substantial—three years, ten months—from arrest to conviction. Our Supreme Court now recognizes that "[i]n evaluating the first *Barker* factor," a very long delay is considered "extreme [or] extraordinary." *See State v. Serros*, 2016-NMSC-008, ¶ 24, 366 P.3d 1121 (involving a delay of over fifty-one months). In its answer brief, the State concedes that irrespective of the case's complexity, the delay in this case

5

triggers a full speedy trial analysis.

**{23}** In reality, such an extraordinary delay "colors the rest of the speedy trial analysis" and "weighs heavily in favor of a defendant's speedy trial claim, bearing in mind that no single factor is dispositive of whether a violation has occurred." *Id*. ¶ 26 (resolving and "clarify[ing] that the parties' fault in causing the delay is irrelevant to the analysis of the first *Barker* factor"). Under *Serros*, when the length of the delay weighs heavily in the defendant's favor, there is a presumption that his speedy trial rights have been violated. *Id.* ¶ 27. Once this presumption is established, the district court must analyze the remaining *Barker* factors "to determine whether they tip the balance back in favor of the societal interest in bringing [the d]efendant to trial." *Serros*, 2016-NMSC-008, ¶ 28 (alteration, internal quotation marks, and citation omitted).

**{24}** We agree that the extreme length of the delay in this case weighs heavily in Defendant's favor under the first *Barker* factor. But it can also overlap into related issues such as ineffective assistance of counsel or whether the State and defense counsel neglected to bring a case to trial for so long that it also weighs in Defendant's favor and against the State when addressing other *Barker* factors. *Serros*, 2016-NMSC-008, ¶¶ 30, 36-38, 41-43 (holding the state must also be accountable for its failure to bring a case to trial under the second *Barker* factor—the reasons for delay—when the length of delay is extraordinary). In light of our Supreme Court's recent decision in *Serros*, Defendant's ineffective assistance of counsel claim becomes interrelated and must be addressed to determine how counsel's ineffectiveness or neglect affects the remaining three *Barker* factors. *Serros*, 2016-NMSC-008, ¶¶ 30, 36-38, 41-43. We recognize that the district court decided Defendant's speedy trial claim before it had the benefit of applying the recent *Serros* decision and acknowledge that it could affect the ultimate outcome in this case.

**2.      The Reasons for the Delay Weigh Heavily Against the State**

**{25}** " 'Closely related to length of delay is the reason the government assigns to justify the delay.' " *Garza*, 2009-NMSC-038, ¶ 25 (quoting *Barker*, 407 U.S. at 531).

> We previously have recognized three types of delay that may be attributed to the [s]tate and weighed against it at varying levels. First, a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. Second, negligent administrative delay should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. As the length of delay increases, negligent or administrative delay weighs more heavily against the [s]tate. And third, appropriate delay, justified for a valid reason, such as a missing witness, is neutral and does not weigh against the [s]tate.

*Serros*, 2016-NMSC-008, ¶ 29 (alterations, internal quotation marks, and citations omitted).

6

**{26}** In *Serros*, our Supreme Court adopted this Court's reasoning in *Stock*, 2006-NMCA-140, ¶ 22, to hold that while generally "a defendant must be held accountable for the actions of his or her attorneys, . . . it may be appropriate to shift the focus to the [s]tate's efforts to bring the case to trial, at least when the record demonstrates that the defendant did not affirmatively cause or consent to the delay." *Serros*, 2016-NMSC-008, ¶¶ 36, 38 (internal quotation marks and citation omitted). The *Serros* court attached particular importance to these considerations when the defendant had been incarcerated prior to trial. *Id.* ¶ 38.

**{27}** Although Defendant asserts that his attorney may be at fault for the delays that the district court attributed to Defendant, it is unnecessary to consider whether the district court erroneously assigned these delays to Defendant because the State now concedes that its "negligence caused approximately two-fifths of the delay" and that this factor should accordingly "weigh heavily in [Defendant's] favor." Although we are not required to accept a party's concession, *see State v. Palmer*, 1998-NMCA-052, ¶ 12, 125 N.M. 86, 957 P.2d 71, our own review of the facts associated with the delay in this case supports the State's concession. Accordingly, we conclude that the reasons for the delays in this case now weigh heavily in favor of Defendant's interest in a speedy trial and further diminish society's interest in bringing Defendant to trial nearly four years after his arrest. We accept the State's concession and weigh this second *Barker* factor heavily in Defendant's favor.

### 3.    Defense Counsel's Failure to Timely Assert the Right to a Speedy Trial

**{28}** Initially, we recognize that Mr. Huerta never asserted Defendant's right to a speedy trial, pro forma or otherwise. In *Barker*, the United States Supreme Court rejected "the rule that a defendant who fails to demand a speedy trial forever waives his right." 407 U.S. at 528. Rather, "the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Id.* As the *Barker* court noted, a defendant's assertion of his right to a speedy trial is in some ways interwoven with the other factors involved in the speedy trial analysis, because "[t]he strength of [the defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that [the defendant] experiences." *Id.* at 531. For this reason, a defendant's failure to timely assert his or her right to a speedy trial is tangentially related to the fourth *Barker* factor: whether the defendant suffered prejudice as a result of the delays in bringing the case against the defendant to trial. *Stock*, 2006-NMCA-140, ¶ 32.

**{29}** Under this factor of the *Barker* analysis, we look to both the timing and the manner of the defendant's assertion of the speedy trial right. *Garza*, 2009-NMSC-038, ¶ 32. "An early assertion of the speedy trial right indicates the defendant's desire to have the charges resolved rather than gambling that the passage of time will operate to hinder prosecution." *Zurla v. State*, 1990-NMSC-011, ¶ 19, 109 N.M. 640, 789 P.2d 588, *modified on other grounds by Garza*, 2009-NMSC-038, ¶¶ 21-22. Conversely, "the closer to trial an assertion is made, the less weight it is given." *State v. Moreno*, 2010-NMCA-044, ¶ 33, 148 N.M. 253,

7

233 P.3d 782.

**{30}**     Defendant concedes that the district court correctly found that Mr. Huerta never filed a pro forma speedy trial demand or any other written demand for a speedy trial. Defendant's first and only invocation of his right to a speedy trial came several months after he was convicted and obtained new counsel. The district court consequently weighed this *Barker* factor against the Defendant. Defendant argues that his failure to assert his speedy trial right until after he was convicted by a jury should be weighed neutrally because Defendant's failure to assert his right stems not from a knowing relinquishment of right to a speedy trial but resulted from Mr. Huerta's incompetent and ineffective representation regarding his speedy trial right.

**{31}**     Defendant requests that this Court analogize his counsel's failures to those in *Stock*, where the delay in reaching a speedy trial was precipitated by counsel's "neglect." 2006-NMCA-140, ¶¶ 30, 32. In the present case, however, Defendant focused his argument solely on counsel's ineffectiveness. Defendant points to several factors in the present case that support the general notion of ineffective representation, one of those factors being the fact that Mr. Huerta spent the majority of his post-hung-jury efforts only asking to withdraw as Defendant's counsel and focusing on the unpaid portion of his retainer from the first trial. Similar to counsel's neglectful actions in *Stock*, Defendant attempts to draw similarities with Mr. Huerta's failure to assert and preserve the right to a speedy trial in the present case. *See id.* ¶ 30. Despite counsel's same failure to assert the defendant's right to a speedy trial in *Stock*, this Court decided to assign little weight to this third *Barker* factor under the particular facts presented in *Stock*. *See* 2006-NMCA-140, ¶¶ 30-33.

**{32}**     We began by explaining in *Stock*,

> [t]he Supreme Court [in *Barker*] articulated two policy considerations that inform the analysis of a defendant's assertion of the right. First, the Court implied that delay sometimes inures to a defendant's benefit, and thus a defendant should not be permitted to purposefully sit by during lengthy delays and then ambush the court and the state with a claim that his or her speedy trial rights have been violated. . . . Second, the Court stated that a defendant's assertion of the right was relevant because it was also an indicator of prejudice—a defendant would be less likely to sit by during lengthy delays if he or she was suffering due to the wait or genuinely thought that the delay would be harmful to his or her case.

2006-NMCA-140, ¶ 32. However, the defendant in *Stock* had the intellectual capacity of a twelve-year-old. *Id.* ¶ 30. The *Stock* defendant was held in custody for several years until the district court found that his speedy trial right was violated and ordered him released. *Id.* ¶ 7. In other words, we determined that there was no plausible reason the defendant would not have asserted his right to a speedy trial had he been capable of doing so.

8

**{33}** In *Serros*, the defendant's three court-appointed attorneys each filed pro forma speedy trial demands. 2016-NMSC-008, ¶ 77. *Serros* noted that while pro forma speedy trial demands are not entitled to much weight under the third *Barker* factor, they are nonetheless sufficient to weigh the factor slightly in the defendant's favor. *Serros*, 2016-NMSC-008, ¶ 77. *Serros* also affirmed the district court's conclusion regarding the defendant's assertion of his speedy trial right based upon statements that he made to his attorneys (and not the court). *Id.* ¶¶ 77-83. The Supreme Court determined that these circumstances were sufficient to weigh the third *Barker* factor in the *Serros* defendant's favor despite his numerous attorneys' acquiescence to all of the state's motions to continue trial on his behalf. *Serros*, 2016-NMSC-008, ¶¶ 81-83.

**{34}** Without more specific evidence regarding the reasons for Mr. Huerta's actions and his failures to act in the present case, we are unable to conclude that this case is controlled by our decision in *Stock*. Defendant's case is also factually different regarding certain individualized considerations recognized in *Stock*. In the present case, Defendant was released pending trial and there is no evidence that Defendant was of diminished capacity. As such, it is not yet possible to conclude from the record before us whether Mr. Huerta's failures to act were the cause of Defendant's failure to assert his right to a speedy trial. *Serros* may also be distinguished at this time because we only know that Mr. Huerta never filed any speedy trial demands, pro forma or otherwise. Other than a dispute over legal fees, it is not sufficiently clear from Defendant's affidavit why Mr. Huerta failed to preserve Defendant's right to a speedy trial or promptly move the retrial forward. Given the fact that Defendant's first trial resulted in a mistrial, the inferential evidence in the record explaining Mr. Huerta's failure to act consists primarily of the unpaid portion of Mr. Huerta's retainer fee and the resulting desire to withdraw from the case. We remain mindful that in *Serros*, a defendant's failure to assert his right to a speedy trial before conviction raises legitimate concerns regarding "whether a defendant was denied needed access to a speedy trial over his objection or whether the issue was raised on appeal as an afterthought." 2016-NMSC-008, ¶ 76 (alterations, internal quotation marks, and citation omitted). Given Defendant's failure to take independent action to directly assert or express his speedy trial right on the record, we conclude that the complete failure to do so prior to his conviction would, without more, require this Court to weigh the third *Barker* factor either neutrally or in favor of the State.

**4.     The District Court's Findings Regarding the Prejudice Factor**

**{35}** The United States Supreme Court in *Barker* explained the "actual prejudice" prong of the constitutional speedy trial analysis as follows:

> Prejudice . . . should be assessed in the light of the interests of [the] defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.

407 U.S. at 532; *see also State v. Maddox*, 2008-NMSC-062, ¶ 32, 145 N.M. 242, 195 P.3d 1254, *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 46-47.

### i.    The District Court's Determination That Defendant Did Not Suffer From Oppressive Pretrial Confinement

**{36}**    After the district court denied Defendant's motion to dismiss on speedy trial grounds, Defendant submitted a motion to reconsider, attaching Defendant's sworn affidavit. The district court denied the motion to reconsider, finding that Defendant's affidavit did not establish that he had suffered oppressive pretrial incarceration because he was on pretrial release throughout the pendency of his case and "under only typical restraints on his liberty that may be imposed on any accused person." Defendant contends that this finding was erroneous because the district court's bail conditions forced Defendant to move to New Mexico and prohibited him from returning to El Paso for any other reason besides work. Lastly, Defendant's affidavit stated that he suffered further prejudice as a result of the district court's order modifying Defendant's conditions of release to prohibit Defendant from traveling to Texas except for work or to visit his attorney.

**{37}**    To be sure, a defendant need not be actually confined in order to establish prejudice under this factor; even if the defendant is released prior to trial, oppressive conditions of release can establish prejudice. *Spearman*, 2012-NMSC-023, ¶ 37, 283 P.3d 272. Defendant's affidavit states that:

> [he has] also not been free for almost one year. While [he has] not been in jail, [he] cannot travel freely. *After [his] second trial* in December of 2012, the judge ordered that [he could] only go to El Paso for work reasons. Before this case, [he] lived with [his] family in El Paso. [Their] church is there, and everyone else from Chaparral goes to El Paso to go shopping, or go to a movie theater, or out to a restaurant. [He] cannot do those things with [his] family.
>
> During this case . . . [he] moved to Chaparral *for work*. As part of [his] job, [he is] on call every other week. [His] children go to school in Chaparral, but [he] cannot do the church projects and fundraising that [they] used to do with [their] church in El Paso.
>
> [He] also work[s] on cars in [his] spare time. There is one auto parts store in Chaparral, but when it does not have equipment [he] cannot go to El Paso to find auto parts. Sometimes a friend or family member is willing to go to El Paso for [him]. Other times, [he has] to wait until the Chaparral store can get what [he] need[s].
>
> [He is] afraid to go to El Paso even for work. Whenever [he] can, [he] ask[s] someone else to go in [his] place because [he is] afraid that [he] will

10

be arrested and not released.

(Emphasis added.) But Defendant's affidavit did not establish that his conditions of confinement were sufficiently oppressive so as to solely weigh the fourth *Barker* factor in Defendant's favor. Our review of the record indicates that Defendant was allowed to travel to Texas to meet with his attorney and prepare his case. Although his conditions of release and the move to Chaparral did impose some specific changes and hardship that may have caused pretrial stress and anxiety for Defendant and his family, we conclude that the district court did not err in finding that Defendant's conditions of release were not equivalent to being confined in jail.

### ii.     Defendant's Other Assertions of Specific Prejudice Resulting From Anxiety and Stress

**{38}**    In his affidavit, Defendant also stated that he suffered the following additional anxiety and stress as a result of the extended pretrial delay in this case: (1) he felt "worried and degraded" between his arrest and the second trial; (2) he was "ashamed . . . [that] the public knows about the charges against [him]"; (3) he was "unable to ignore" news stories about rapes, assaults, and kidnappings in the news media, and he wonder[ed] whether the suspects in those stories were falsely accused; (4) although his employer was "very supportive[,]" the quality of Defendant's work ha[d] suffered, and he worrie[d] that he [would] lose his job; (5) he ha[d] not told his stepchildren about the charges, and "[keeping] them in the dark" about the charges ha[d] "bother[ed]" Defendant "a great deal."; (6) the stress of the charges "ha[d] taken a toll on [Defendant's] marriage[,]" and Defendant's wife was unable to forgive Defendant for his unfaithfulness (they [were] considering a divorce); (7) he [was] too ashamed about the case to tell his brothers and sisters about it; (8) he had gained weight, did not sleep as well as a result of the charges, the second trial had made these symptoms more severe; and (9) he feared that he would be deported as a result of his conviction.

**{39}**    The district court rejected several of Defendant's contentions. First, regarding any prejudice related to Defendant's employment, the district court concluded that "Defendant . . . remained employed with the same job throughout the pendency of this case. Thus, he ha[d] not suffered loss of employment or loss of income due to the delay." Second, the district court found that "[Defendant] ha[d] not shown that his anxiety over his case or the disruptions to his life have been beyond what any accused person might suffer. . . . [T]he discord in his marriage can be attributed to the admitted fact that he was 'unfaithful' to his wife, not because of the delay in this case."

**{40}**    Several factors or contentions that Defendant raised regarding pretrial anxiety and stress were not specifically addressed by the district court. First, the district court did not address the non-typical anxiety and stress arising from the need to move Defendant's family to Chaparral in order to keep his existing job and avoid losing this established employment. In addition, the district court did not factor in the long-term prejudicial effect that

11

generalized anxiety and stress have when it lingers for nearly four years. *See Stock*, 2006-NMCA-140, ¶ 44 (recognizing that even prejudice that is only mildly persuasive will "intensif[y] over time" and still weigh in a "[d]efendant's favor overall because of the extreme length of the delay"). This Court has recognized that unacceptably long periods of anxiety and stress that a defendant suffers due to delays in trial should be considered in determining whether the fourth *Barker* factor—prejudice—will eventually weigh in a defendant's favor. *See State v. Lujan*, 2015-NMCA-032, ¶ 20, 345 P.3d 1103. We also acknowledge that a defendant need not assert prejudice that is categorically different from the type of prejudice suffered by any accused person in order to demonstrate that he was unduly prejudiced by excessive pretrial delay. *Spearman*, 2012-NMSC-023, ¶¶ 37-38. "[This] means that at some point the delay simply becomes intolerable." *Serros*, 2016-NMSC-008, ¶ 98.

**{41}** *Stock* also recognized that under the proper factual circumstances, a defendant who did fail to adequately assert his right to a speedy trial and only establishes slight prejudice can still have his speedy trial rights violated when an unacceptably long period of delay—three and one-half years—has occurred. 2006-NMCA-140, ¶¶ 18, 30, 44-45. Even if the long delay in this case only creates a slight level of prejudice in favor of Defendant, it may be determinative to overall analysis of the four *Barker* factors. *See Stock*, 2006-NMCA-140, ¶ 44.

**{42}** Defendant's affidavit primarily identifies the types of prejudice that were not the types of severe prejudice that would weigh more heavily in his favor when there is a delay in bringing a case to trial. *See State v. Steinmetz*, 2014-NMCA-070, ¶¶ 63-65, 327 P.3d 1145 (supporting a determination of slight prejudice in a defendant's favor that arose from his conditions of release and other general anxiety factors that existed over a long period of delay). Except for the forced relocation to Chaparral to maintain employment, Defendant's other assertions of prejudice primarily relate to his indictment or the other typical types of stress and anxiety that might be suffered by an accused who is awaiting trial. *See Maddox*, 2008-NMSC-062, ¶ 33 (stating that "some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial" (alterations, internal quotation marks, and citation omitted)).

**{43}** Rather than reject the district court's finding that Defendant did not establish prejudice under the fourth *Barker* factor, we would prefer that the district court evaluate the prejudice factor anew, under the guidance this Court provided by *Stock*. 2006-NMCA-140, ¶¶ 40-44. Accordingly, the prejudice factor should be reevaluated and Defendant's relocation to Chaparral should now be considered along with the other stress and anxiety factors that continued for a very long period of time.

**B.      Establishing the Claim of Ineffective Assistance of Counsel**

**{44}** "Criminal defendants are entitled to reasonably effective assistance of counsel under the Sixth Amendment of the United States Constitution." *State v. Crocco*, 2014-NMSC-016,

¶ 12, 327 P.3d 1068 (internal quotation marks and citation omitted). "The standard for effective assistance of counsel is whether defense counsel exercised the skill, judgment, and diligence of a reasonably competent defense attorney." *State v. Herrera*, 2001-NMCA-073, ¶ 36, 131 N.M. 22, 33 P.3d 22 (internal quotation marks and citation omitted). A defendant must show that his attorney erred and that this error prejudiced the defendant in order to prevail on a claim of ineffective assistance of counsel. *State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517. The "prejudice" element of an ineffective assistance of counsel claim is not satisfied when the defendant proves that a particular act or omission by his counsel was prejudicial to his defense; instead, the defendant must show a "reasonable probability" that but for the attorney's objectively unreasonable conduct, the result of the proceedings would have been different. *State v. Brazeal*, 1990-NMCA-010, ¶ 23, 109 N.M. 752, 790 P.2d 1033.

**{45}** "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *Crocco*, 2014-NMSC-016, ¶ 14 (internal quotation marks and citation omitted). "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Id.* (internal quotation marks and citation omitted). In order to establish a successful claim of ineffective assistance of counsel, a defendant is required to "first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289. A prima facie case of ineffective assistance of counsel is made on appeal where: "(1) it appears from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible, rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial." *Herrera*, 2001-NMCA-073, ¶ 36 (internal quotation marks and citation omitted). Because it is dispositive to our analysis, we first address whether Defendant has made a prima facie case of ineffective assistance of counsel that would justify a remand to the district court for an evidentiary hearing.

**{46}** Defendant asserts that his attorney was constitutionally ineffective and acted unreasonably because Mr. Huerta (1) failed to ever file or assert Defendant's right to a speedy trial at any time, pro forma or otherwise; (2) made no objection to the admission of the victim's out-of-court statements through the testimony of various witnesses for the State and did not impeach the victim and other witnesses with evidence that would tend to undermine the victim's credibility; (3) did not request an interpreter for Defendant, whose first language is Spanish; (4) left the courtroom while the State's DNA evidence expert testified; and (5) did not adequately prepare for the first trial. Because we determine that the evidence in the record is sufficient to establish a prima facie case of ineffective assistance or counsel regarding the failure of Mr. Huerta to assert Defendant's right to a speedy trial, we shall remand this matter to the district court for an evidentiary hearing on Defendant's claims of ineffective assistance of counsel.

**1.      Whether it Appears From the Record that Mr. Huerta Acted Unreasonably**

13

**{47}**     It is undisputed that Mr. Huerta never asserted Defendant's right to a speedy trial, pro forma or otherwise. The right to a speedy trial was only asserted after Defendant obtained substitute counsel and filed a post-trial motion to dismiss on speedy trial grounds. Whether Defendant specifically intended to obtain a speedy trial and not acquiesce with his counsel's agreement to postpone trial is less certain but was addressed by Defendant's affidavit.

**{48}**     In his affidavit, Defendant stated: (1) "[he did] not remember ever being mailed anything, including notices for court hearings, by Mr. Huerta[;]" (2) "[he] did not receive copies of any motions filed in [the] case[, only] received mailed notices of hearings from the [c]ourt, . . . [he] came to the hearings but [he] did not know what they were about, and . . . [he] trusted [Mr. Huerta] to tell [him] if they were anything important or if [he] needed to do anything to help [his] case[;]" (3) "Mr. Huerta never discussed filing motions to continue the trial, trial delays, or [Mr. Huerta's] strategy for [his] trial with [him;]" (4) [b]ecause [he] had never been in this position before, [he] simply trusted [his] lawyer and assumed that what was happening was normal[;]" (5) "[t]he only discussions [he could] recall were when Mr. Huerta would call [him] to ask for more money . . . [a]fter the first trial, Mr. Huerta no longer called to inform [him] of hearings[, t]he only discussions we had were about further payment [of his fees;]" (6) "[t]he only notice [he] received of Mr. Huerta's . . . motions to withdraw as counsel were the [c]ourt's notices of hearings on them [and Mr. Huerta told him] it was just simple steps that we ha[d] to take[;]" (7) "Mr. Huerta did not discuss the second trial delay with [him and he] still believed that what was happening was the normal process[;]" (8) "[t]hroughout the case, [he] thought that what was happening was normal[, he] trusted [his] lawyer, Mr. Huerta, and [he] did not want to make [Mr. Huerta] angry by asking questions because [his] freedom and [his] life were in [Mr. Huerta's] hands[;]" and (9) "[he] want[ed] to put it behind [him] and return to a normal life." The totality of these statements, made under oath, reasonably convey that Defendant desired to have a speedy trial within the "normal process" of our court system and that he did not acquiesce with any of Mr. Huerta's actions to postpone trial. It would be reasonable to view Defendant's statements—though perhaps somewhat vague in specificity—as evidence that he desired to assert and preserve his right to a speedy and normal trial process. *See Serros*, 2016-NMSC-008, ¶ 81. In addition, it is clear from the record that the majority of Mr. Huerta's actions and court filings, after the first trial ended in a hung jury, were focused on his desire to withdraw because of a dispute over the payment of his legal fees for the first trial. Nothing in the record indicates that it was reasonable or necessary for Mr. Huerta to disregard Defendant's constitutional right to a speedy trial or fail to assert that right for nearly four years in this case. As a result, sufficient prima facie evidence exists to establish that Mr. Huerta failed to act reasonably when he totally neglected to assert Defendant's right to a speedy trial. *See State v. Leon*, 2013-NMCA-011, ¶ 20, 292 P.3d 493 (recognizing a presumption of counsel's ineffectiveness when constitutional rights are implicated and counsel fails to preserve a defendant's right to appeal).

**2.     Whether This Court Can Think of a Plausible, Rational Strategy or Tactic to Explain Mr. Huerta's Conduct**

**{49}** We must determine whether a plausible, rational strategy or tactic would exist to explain Mr. Huerta's failure to ever assert Defendant's right to a speedy trial during nearly four years of representation. *See Herrera*, 2001-NMCA-073, ¶ 36. Irrespective of the limited communication between an attorney and his or her client, asserting and preserving the initial right to a speedy trial is a perfunctory or pro forma practice undertaken by the criminal defense bar. *See Moreno*, 2010-NMCA-044, ¶ 33 (describing the initial filing of a demand for speedy trial around the time of a defendant's arraignment as a pro forma or perfunctory assertion that normally carries minimal weight). It is difficult to explain Mr. Huerta's total failure to assert Defendant's right to a speedy trial, even if all that was filed was a pro forma demand during the early stages of the prosecution. *See State v. Montoya*, 2015-NMCA-056, ¶ 24, 348 P.3d 1057 (noting that even an initial pro forma request for a speedy trial may not be considered insignificant depending upon the "light of the overall circumstances in [the] case"). We understand from Defendant's affidavit that Mr. Huerta also practiced in El Paso, Texas and expressed that "Texas law is very different than New Mexico law, and that he knew more about Texas law." Whether practicing primarily in Texas effected Mr. Huerta's failure to assert Defendant's speedy trial rights is not clear. However, because Defendant assumed and wanted his case to proceed to trial under the "normal process[,]" none of these circumstances provide a plausible, rational strategic or tactical explanation for Mr. Huerta's failure to assert Defendant's right to a speedy trial.

**{50}** The issue of Defendant's right to a speedy trial became even more significant once the first trial ended in a mistrial in April 2010, fourteen months after the original criminal charges were filed. At this point, retrial was scheduled to occur no sooner than September 29, 2010, nineteen months after the original criminal charges were filed. In reality, Defendant's retrial was continually delayed and did not occur until December 5, 2012, forty-six months after the original criminal charges were filed. The State was assigned and now accepts the majority of the responsibility for this long period of delay. Despite the mounting implications to Defendant's right to a speedy trial, Mr. Huerta failed to assert Defendant's speedy trial right through written pleadings or at any of the hearings scheduled by the district court. In addition, the State did not address or attempt to identify any plausible, rational strategy or tactic that would explain Mr. Huerta's failure to ever assert Defendant's right to a speedy trial. It is apparent from the record that Mr. Huerta focused on his withdrawal from the case, getting paid his previous retainer in full, and avoiding further representation at a second trial. Again, the failure to protect a defendant's constitutional rights will create the presumption of ineffective assistance of counsel when counsel's action is critical to the preservation of the right itself. *See Leon*, 2013-NMCA-011, ¶ 20. Our Supreme Court has recognized various situations where no rational strategy appears to exist to explain the conduct or actions of defense counsel. *See State v. Paredez*, 2004-NMSC-036, ¶ 22, 136 N.M. 533, 101 P.3d 799; *State v. Roybal*, 2002-NMSC-027, ¶ 24, 132 N.M. 657, 54 P.3d 61. Based upon the record before us, Mr. Huerta's failure to act regarding the assertion and preservation of Defendant's right to a speedy trial appears to have no rational or strategic basis. As a result, we conclude that this second requirement for a prima facie showing of ineffective assistance of counsel has now been established.

### 3. Whether the Actions of Mr. Huerta Were Prejudicial to Defendant

**{51}** In determining whether the failures of Mr. Huerta were prejudicial to Defendant, we must also address whether an effective attorney's assertion and preservation of the right to a speedy trial would have ultimately benefitted Defendant and his speedy trial claim. *See Brazeal*, 1990-NMCA-010, ¶ 23 (recognizing that to establish prejudice, a defendant must show a reasonable probability that the results of the proceedings would have been different). It appears reasonable that if Mr. Huerta had asserted Defendant's right to a speedy trial and not acquiesced to the State's delays, his speedy trial claim had merit and a reasonable probability of success. *See Serros*, 2016-NMSC-008, ¶ 86 (recognizing that "if the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated" (internal quotation marks and citation omitted)). As a result, a prima facie showing of prejudice was reasonably established to exist. Mr. Huerta's ineffective assistance of counsel, if established, would be the missing link that prevented Defendant from succeeding to prevail on his speedy trial claim. *See id.* ¶ 36.

**{52}** As our Supreme Court recognized in *Serros*, "as the delay mounts in bringing a defendant to trial, the [s]tate's obligation to alert the district court becomes increasingly pressing[,] . . .[a]ccordingly, we do not deem it unfair to [also] impose upon the prosecution the burden of monitoring the progress of the case and, at some point, alerting the [district] court of potential speedy trial consequences." *Id.* ¶¶ 95-96. Because "[t]he [s]tate must ensure that justice is done[,] . . . it's [unfortunately] the duty of the [s]tate to work both sides of the street sometimes." *Id.* ¶¶ 97-98 (internal quotation marks and citation omitted). Because the State did not do so in this case and because *Serros* has put the district courts on notice that there can be a distinction "between [a d]efendant agreeing to the [s]tate's requests to [delay] trial and [a d]efendant's attorney's agreeing to such requests[,]" an evidentiary hearing is needed to properly establish the effectiveness of Mr. Huerta's actions as Defendant's trial counsel. *Id.* ¶ 79 (emphasis omitted). The viability of Defendant's Sixth Amendment speedy trial claim must now be fully developed on remand. Because we are remanding Defendant's ineffective assistance of counsel claim regarding the assertion of the right to a speedy trial back to the district court for an evidentiary hearing, we also leave Defendant's remaining assertions of ineffective assistance of counsel for consideration by the district court on remand.

### CONCLUSION

**{53}** The district court's denial of Defendant's post-trial motion to dismiss on speedy trial grounds is remanded back to the district court for an evidentiary hearing. First, the district court shall hold an evidentiary hearing to determine whether Defendant's counsel, Mr. Huerta, provided ineffective assistance of counsel, especially with regard to his failure to assert Defendant's right to a speedy trial. If the district court determines that Mr. Huerta was constitutionally ineffective in failing to assert Defendant's right to a speedy trial, then the

district court must also address whether Defendant's Sixth Amendment right to a speedy trial was ultimately violated after considering our decision in *Stock*, our Supreme Court's recent decision in *Serros*, and the reevaluation of the fourth *Barker* factor regarding prejudice. If necessary, the district court shall also take evidence and consider the remaining factual assertions of ineffective assistance of counsel identified herein. We hold that Defendant's remaining claims of error are premature at this time, dismiss this appeal, and leave all of Defendant's claims of error ripe for any subsequent appeal.

**{54}     IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**J.MILES HANISEE, Judge (dissenting).**

**HANISEE, Judge (dissenting).**

**{55}**     The majority states that "[t]his case presents a unique appellate circumstance where Defendant's assertion of a constitutional violation of his right to a speedy trial is interrelated and potentially dependent upon his constitutional claim of ineffective assistance of counsel." Majority Op. ¶ 1. But there are five formal[1] and at least ten unpublished[2] decisions by this

---

[1] *See Serros*, 2016-NMSC-008, ¶¶ 46-67; *State v. Smith*, 2016-NMSC-007, ¶¶ 61-64, 367 P.3d 420; *State v. Fierro*, 2012-NMCA-054, ¶ 65, 278 P.3d 541; *State v. Graham*, 2003-NMCA-127, ¶¶ 33-34, 134 N.M. 613, 81 P.3d 556, *reversed on other grounds*, 2005-NMSC-004, 137 N.M. 197, 109 P.3d 285; *State v. Cooper*, 1998-NMCA-180, ¶ 27, 126 N.M. 500, 972 P.2d 1.

[2] *See State v. Menchaca*, No. 33,290, dec. ¶¶ 28-29 (N.M. Sup. Ct. Nov. 7, 2013) (non-precedential); *State v. McDaniel*, No. 31,501, mem. op. ¶¶ 72-78 (N.M. Ct. App. Oct. 1, 2015) (non-precedential); *State v. Alderete*, No. 34,222, mem. op. ¶ 10 (N.M. Ct. App. June 1, 2015) (non-precedential); *State v. Chavez*, No. 34,155, mem. op. ¶¶ 8-12 (N.M. Ct. App. June 16, 2015) (non-precedential); *State v. Zamora*, No. 32,935, mem. op. ¶ 2 (N.M. Ct. App. Jan. 6, 2014) (non-precedential); *State v. Guerra*, No. 29,954, mem. op. at *2-3 (N.M. Ct. App. March 22, 2012) (non-precedential); *State v. Jenkins*, No. 29,026, mem. op. at *8 (N.M. Ct. App. March 23, 2011) (non-precedential); *State v. Huband*, No. 28,569, mem. op. at *5-6 (N.M. Ct. App. Feb. 17, 2010) (non-precedential); *State v. Riggs*, No. 29,520, mem. op. at *2-3 (N.M. Ct. App. Jan. 11, 2010) (non-precedential); *State v. Morgan*,

Court and our Supreme Court where the defendant raised both a speedy trial claim and an ineffective assistance of counsel claim based on counsel's alleged negligence in failing to demand a speedy trial. Not one of these cases determines a prima facie case of ineffective assistance of counsel to exist based on an attorney's negligent failure to demand a speedy trial, as the majority does here. Majority Op. ¶ 49. As I explain below, I do not think this is coincidence: allowing a defendant to rebrand a speedy trial claim as a prima facie claim for ineffective assistance of counsel undermines the purpose and doctrinal coherence of our speedy trial caselaw.

**{56}** The majority concludes that Defendant's attorney's "failure to assert Defendant's right to a speedy trial" renders his performance prima facie ineffective in this case, Majority Op. ¶ 49, despite Defendant's release pending trial and the absence of any evidence in the record that Defendant's attorney was instructed to timely bring Defendant's case to trial. By equating the absence of a demand with a failure to make a demand, the majority undermines the purpose behind *Barker*'s third factor:

> permit[ting] . . . [the court] to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client . . . [and] to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection.

*Barker*, 407 U.S. at 529.

**{57}** *Stock* and *Serros* evaluate allegations that defense counsel negligently failed to demand a speedy trial under *Barker*'s third factor. In *Stock*, we found that the defendant's lengthy pretrial confinement combined with his intellectual disability justified "giv[ing] less weight to Defendant's failure to assert his speedy trial rights." *Stock*, 2006-NMCA-140, ¶¶ 30-31. In *Serros*, our Supreme Court upheld the trial court's decision to weigh the third *Barker* factor in the defendant's favor where there was evidence to support a distinction "between [the d]efendant agreeing to the State's requests to extend the time for commencing his trial and [the d]efendant's attorneys agreeing to such requests." *Serros*, 2016-NMSC-008, ¶ 79. In other words, our Supreme Court found that the third *Barker* factor could be weighed in the defendant's favor where there was evidence the defendant himself did not acquiesce in delays, even if his or her attorneys did. *Id.* ¶¶ 78-79. Because Defendant was not incarcerated and there is no evidence that he is either mentally incapable of demanding a speedy trial or definitively wished to proceed to trial, this case does not fall within the ambit of cases like *Stock* and *Serros*.

**{58}** The majority's analysis also depends on an assumption of fact that is not supported by the record: that had Defendant's attorney demanded a trial, a second trial would not have

---

No. 29,478, mem. op. at *2 (N.M. Ct. App. Oct. 6, 2009) (non-precedential).

taken place sooner. Or another: that defense strategy did not include a preference for a delayed second trial setting. When the "outcome" of a proceeding is a conviction, a claim of ineffective assistance of counsel can be evaluated from the fixed standpoint of a *fait accompli*: the jury's guilty verdict or the defendant's decision to accept a plea offer. But when the "outcome" is the denial of a motion to dismiss for a speedy trial violation, the result of an appeal can change depending on whether the claim is characterized as involving the defendant's right to speedy trial or effective assistance of counsel. A speedy trial claim where there is no prejudice and no demand fails under our speedy trial cases and a conviction is affirmed. *Garza*, 2009-NMSC-038, ¶ 39. But under the majority's approach, a record with no evidence of a speedy trial demand and no district court finding of actual prejudice, a case may still satisfy the prima facie factors for a viable ineffective assistance of counsel claim based solely on the length of time between arrest and conviction.[3]

**{59}** There are good reasons behind the third *Barker* factor and our Supreme Court's preference that ineffective assistance of counsel claims be presented and resolved in collateral proceedings. *Bernal*, 2006-NMSC-050, ¶ 33. A habeas petitioner then has the benefit of a different attorney who can offer a measured and objective assessment of the petitioner's previous attorney's performance. *See* Rule 5-802(G)(1) NMRA (providing for initial review and appointment of counsel for nonfrivolous habeas corpus petitions). As well, the petitioner's previous attorney can be called to testify as a witness about whether the defendant sought a speedy trial or willingly acquiesced in delay, without the danger of compromising the attorney-client relationship that may otherwise persist during litigation regarding whether a defendant's speedy trial right was violated. The majority's holding clouds our already-complex speedy trial analysis and undermines the preference that ineffective assistance of counsel claims be decided in collateral proceedings. For these reasons, I respectfully dissent.

---

[3]The majority does not affirm or reverse the district court's finding that Defendant failed to show particularized prejudice under the fourth *Barker* factor. Instead, it instructs the district court to consider whether Defendant might have suffered prejudice "from the need to move [his] family to Chaparral in order to keep his existing job and avoid losing this established employment[,]" or the "long-term prejudicial effect that generalized anxiety and stress have when it lingers for nearly four years." Majority Op. ¶ 40. On the first basis, I think Defendant's affidavit is sufficiently clear to uphold the district court's finding that he did not suffer prejudice as a result of the delays in this case: he admits that he moved to Chaparral "for work" nearly two years after his arrest. As to the second ground, I can perceive no difference between a finding of prejudice based on "generalized anxiety and stress . . . [that] lingers for nearly four years" and a per-se prejudice rule based solely on the length of the delay. Such a bright-line rule may be sensible as a matter of policy, but it is not an accurate statement of the law we must apply. *See Serros*, 2016-NMSC-008, ¶ 26 (stating that "no single [*Barker*] factor is dispositive of whether a [speedy trial] violation has occurred").

_____
**J. MILES HANISEE, Judge**