# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date:  August 24, 2017

**NO. S-1-SC-36062**

**STATE OF NEW MEXICO,**

 Plaintiff-Petitioner,

v.

**JESUS M. CASTRO,**

 Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Petitioner

McGraw & Strickland, L.L.C.
Margaret Strickland
Las Cruces, NM

for Respondent

**OPINION**

**CHÁVEZ, Justice.**

{1}     Defendant Jesus Castro was charged with two counts of criminal sexual penetration. Defendant had two trials; the first resulted in a mistrial, and thirty-two months later, after the second trial, a jury convicted him of one count of forced penile penetration. The delay was due to multiple continuances, attorney motions to withdraw from the case, the mistrial, and fifteen months during which the case was stagnant. We are mainly concerned with the thirty-two months it took to retry Defendant because his first trial occurred almost eleven months after his arraignment, which is within the speedy trial time frame for a simple case.

{2}     Despite the delay in setting his retrial, neither Defendant nor his attorney, Jonathan Huerta, asserted Defendant's right to a speedy trial before his conviction. Four and one-half months after Defendant's conviction, his new attorney filed a post-trial motion to dismiss with the district court based on speedy trial grounds. The motion alleged that Defendant failed to assert his right earlier due to ineffective assistance of counsel.

{3}     The district court denied Defendant's motion to dismiss. On appeal, the Court of Appeals remanded the case back to the district court, instructing it to hold an evidentiary hearing to determine whether there was ineffective assistance of counsel,

particularly regarding Huerta's failure to assert Defendant's right to a speedy trial. *State v. Castro*, 2016-NMCA-085, ¶ 53, 381 P.3d 694. In addition, if the district court found that Huerta's assistance was constitutionally ineffective, the Court of Appeals instructed it to reassess whether Defendant's right to a speedy trial had been violated. *Id.*

{4} The State filed a petition for writ of certiorari with this Court, *State v. Castro*, 2017-NMCERT-___ (No. S-1-SC-36062, Aug. 26, 2016), asking us to determine whether "the mere failure to file a demand for a speedy trial establish[es] a prima facie case of ineffective assistance of counsel." In answering this question, we necessarily analyze (1) whether Defendant's right to a speedy trial was violated, and if not, (2) whether he has proved a prima facie case of ineffective assistance of counsel.

{5} We hold that on the record before us, Defendant's right to a speedy trial was not violated and Defendant did not make a prima facie showing of ineffective assistance of counsel because Huerta may have strategically withheld a demand for a speedy trial if it would benefit Defendant's case. Accordingly, we reverse the Court of Appeals without prejudice to a habeas corpus petition, which Defendant may bring to resolve whether Huerta provided ineffective assistance of counsel for failing to

assert Defendant's speedy trial right, in addition to any other allegations of ineffective assistance of counsel.

**I.     BACKGROUND**

{6}     Defendant's arrest arose out of an encounter between him and the victim at Desert Aire Water Company in Chaparral, New Mexico, where they both worked. On February 2, 2009, the victim and Defendant were both at work.  The victim testified that the following events then occurred.  Defendant was already at work when she arrived; she greeted him and sat down at her computer.  Defendant asked the victim for help with his computer, and she went over to him.  As the victim stood next to Defendant, he grabbed her by the waist and pulled her toward him, causing her to fall on top of him.  She was able to get up after she fell on Defendant, but as she walked away, Defendant grabbed her and sat her back on the chair.  Defendant then placed his hands on the victim's legs and attempted to lift her skirt.  She continuously told Defendant "no," but he persisted.  She tried to get up, but Defendant pushed her down again, and then pushed her against a counter.  Defendant lifted the victim's skirt again and tried to move her underwear to the side as she tried to get away.  Defendant then digitally penetrated the victim.  Subsequently, Defendant penetrated her with his penis and ejaculated on the mat in front of them.

{7}     Defendant was arrested on February 6, 2009 and charged with two counts of criminal sexual penetration for the digital and penile penetration of the victim.  He posted bond and was released on the same day as his arrest, and remained out of custody with few restrictions throughout the pendency of his case.

{8}     Defendant's first trial was almost eleven months after his arraignment, which ultimately resulted in a mistrial.  Thirty-two months after his first trial, Defendant was tried again.  Defendant's second jury acquitted on Count 1, forced digital penetration, and convicted on Count 2, forced penile penetration.

## II.    DISCUSSION

{9}     The Court of Appeals conflated two separate, complex analyses in its opinion. The Court began its analysis by characterizing the case as "a unique appellate circumstance where Defendant's assertion of a constitutional violation of his right to a speedy trial is interrelated and potentially dependent upon his constitutional claim of ineffective assistance of counsel." *Castro*, 2016-NMCA-085, ¶ 1.  In merging the speedy trial and ineffective assistance of counsel analyses, the Court relied on its interpretation of *State v. Serros*, 2016-NMSC-008, 366 P.3d 1121 and *State v. Stock*, 2006-NMCA-140, 140 N.M. 676, 147 P.3d 885, which considered attorney neglect in analyzing the *Barker v. Wingo*, 407 U.S. 514 (1972) speedy trial factors.  *Castro*,

2016-NMCA-085, ¶¶ 22-26, 28, 31-34, 53. *Stock* and *Serros* are distinguishable, and therefore the Court of Appeals's reliance on those cases is misplaced.

{10}     In *Stock*, the Court of Appeals analyzed a defendant's right to a speedy trial in terms of his attorney's neglect, which caused "unreasonable and unnecessary" delays. 2006-NMCA-140, ¶ 21.  The Court characterized the delay of three and one-half years as "particularly egregious" because the defendant "ha[d] the intellectual capacity of a twelve-year-old," which raised concern about his ability to comprehend and assert his right to a speedy trial.  *Id.* ¶¶ 18, 30.  Furthermore, the defendant suffered severe prejudice because he was harassed and assaulted numerous times while he was incarcerated during his "lengthy pretrial incarceration."  *Id.* ¶¶ 18, 36. In considering the defendant's circumstances, the Court reasoned that it would be unfair to attribute the delays to the defendant when they were caused by his attorney. *Id.* ¶ 22.

{11}     In *Serros*, this Court adopted the *Stock* reasoning and considered attorney neglect in a speedy trial analysis where the defendant was similarly subjected to a lengthy delay and undue prejudice.  In *Serros*, the defendant suffered extreme prejudice due to the length and nature of his incarceration, which extended over four years.  2016-NMSC-008, ¶ 1.  While he was incarcerated, the defendant was

segregated, physically and verbally abused, and because of the nature of his charges, was held in protective custody. *Id.* ¶ 88. The defendant spent most of his days alone in a cell and did not have the opportunities available to the other inmates within the jail's general population, namely recreational time. *Id.* He was given less than an hour a day to address his personal needs, such as bathing and communicating with his attorney and family. *Id.* The defendant never stood trial; instead, his case was dismissed only after the district court heard his motion to dismiss on speedy trial grounds over four years after his arrest. *Id.* ¶ 7.

{12} Neither *Stock* nor *Serros* is applicable here because the prejudice suffered by the defendants in those cases was substantial, and it was necessary to consider attorney neglect when a *Barker* factor would otherwise weigh against the defendant. *See Serros*, 2016-NMSC-008, ¶ 21 ("[W]e note that the circumstances of this case are extreme. . . . [The d]efendant was held without a trial for over four years and three months under segregated circumstances. These circumstances necessarily color our entire analysis."); *Stock*, 2006-NMCA-140, ¶ 1 (concluding that under the egregious facts of the case, it was reasonable to consider attorney neglect when analyzing whether a defendant's right to a speedy trial was violated). In fact, this Court in *Serros* specifically limited the adoption of *Stock*'s reasoning, in taking into account

attorney neglect within speedy trial analyses, to cases where "the delay is extraordinary and the defendant is held in custody." *Serros*, 2016-NMSC-008, ¶ 43. Here, Defendant was not incarcerated, and he maintained his job during the delay in trying his case. His prejudice, if any, is not comparable to that of the defendants in *Stock* and *Serros*.

{13}    Furthermore, Defendant is not "effectively blameless." *Serros*, 2016-NMSC-008, ¶ 42. The *Stock* defendant's mental capacity affected his ability to assert his right to a speedy trial, and the *Serros* defendant adamantly and continuously asserted his right; therefore, both were blameless, and it would be unfair to hold them accountable for the delays caused by their attorneys. *Serros*, 2016-NMSC-008, ¶ 45; *Stock*, 2006-NMCA-140, ¶ 30. That is not the situation here. There is no showing that Defendant requested a speedy trial or that any continuances to which Huerta agreed were contrary to Defendant's wishes and should not be weighed against him. To the contrary, Defendant admits that he did not ask for a speedy trial solely because he "did not want to make [Huerta] angry."

{14}    This is not an extreme case where the prejudice is palpable, and it is necessary to consider attorney neglect when analyzing whether the right to a speedy trial was violated. Therefore, the *Stock* and *Serros* analysis does not apply. Accordingly, we

7

analyze the speedy trial and ineffective assistance of counsel issues separately. We first address whether on the record before us Defendant's Sixth Amendment right to a speedy trial was violated, and then whether Defendant has established a prima facie case of ineffective assistance of counsel.

**A.      Defendant's Right to a Speedy Trial Was Not Violated**

{15}      In a criminal prosecution, the accused is constitutionally entitled to a speedy trial. U.S. Const. amend. VI; N.M. Const. art. II, § 14. The right to a speedy trial is unique in that it balances two separate interests:  (1) preventing prejudice to the accused, and (2) protecting societal interests in bringing the accused to trial. *State v. Garza*, 2009-NMSC-038, ¶ 12, 146 N.M. 499, 212 P.3d 387.

{16}      In reviewing the district court's ruling that Defendant's right to a speedy trial was not violated, we weigh and balance de novo the four factors presented by the United States Supreme Court in *Barker* and adopted by New Mexico courts:  "(1) [the] length of delay [in bringing the case to trial], (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) [the] prejudice to the defendant." *State v. Spearman*, 2012-NMSC-023, ¶¶ 17, 19, 283 P.3d 272 (quoting *Barker*, 407 U.S. at 530). We weigh the conduct of both the State and Defendant. *Barker*, 407 U.S. at 530.

8

{17} Because we agree with the district court's analysis of Defendant's right to a speedy trial, we incorporate that analysis and articulate several points to further address Defendant's concerns. We now turn to the specific circumstances surrounding each factor.

**1. The length of the delay is presumptively prejudicial and weighs against the State**

{18} The first factor "has a dual function: it acts as a triggering mechanism for considering the four *Barker* factors if the delay crosses the threshold of being presumptively prejudicial, and it is an independent factor to consider in evaluating whether a speedy trial violation has occurred." *State v. Samora*, 2016-NMSC-031, ¶ 10, 387 P.3d 230 (internal quotation marks and citation omitted).

{19} Defendant was arrested on February 6, 2009 and indicted by a grand jury on May 28, 2009. Importantly, Defendant waived extradition from Texas and was arraigned in New Mexico on June 15, 2009, which first caused Defendant to come within the purview of the State to begin the prosecutorial process. The case went to trial on April 7, 2010, which resulted in a hung jury, and the district court subsequently declared a mistrial.

{20} While the district court did not make any findings about the complexity of the case, we conclude that the case is simple because the State was able to try Defendant

9

one day less than eleven months after he was arraigned. *Garza*, 2009-NMSC-038, ¶ 48 ("[W]e adopt one year as a benchmark for determining when a simple case may become presumptively prejudicial."). In this respect, the State prosecuted Defendant within the constitutionally prescribed time for a simple case. Therefore, we do not consider the time period from Defendant's arraignment to his first trial in calculating the length of delay.

{21} The delay that is particularly disturbing is the thirty-two months from the mistrial on April 7, 2010 to the second trial on December 5, 2012, when Defendant was ultimately convicted. To begin the analysis, the speedy trial clock does not begin to run anew—that is, the court does not have another twelve months to schedule a simple case for retrial. Ordinarily the court should schedule the retrial as soon as its docket permits unless the parties justifiably require additional pre-retrial discovery or motions practice. There is no question that the delay in retrying Defendant was extraordinary and weighs heavily in favor of Defendant. *Id.* ¶ 24 ("[T]he greater the delay the more heavily it will potentially weigh against the State."). Accordingly, we agree with the district court that the length of delay is presumptively prejudicial.

**2. The reasons for the delay weigh slightly against the State**

{22} "Closely related to length of delay is the reason the government assigns to

justify the delay." *Barker*, 407 U.S. at 531. There are three types of delay that may be attributed to the State and are weighed against it in varying ways. *Serros*, 2016-NMSC-008, ¶ 29. The first are "deliberate attempt[s] to delay the trial in order to hamper the defense[, which] should be weighted heavily against the government." *Barker*, 407 U.S. at 531. The second are neutral delays, including "negligence or overcrowded courts [that] should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* Finally, there are "appropriate" delays for which there is "a valid reason, such as a missing witness." *Id.*

{23} We agree with the district court that the period of delay in which the case languished with virtually no activity for fifteen months from December 2010 to February 2012 weighs against the State. However, absent any evidence to the contrary, this is negligent delay, which is a neutral reason and weighs only slightly against the State.

{24} The remaining seventeen months of delay are either justified or attributable to Defendant. During this time the State requested continuances for valid reasons, including a key witness's unavailability and the need for further time to complete discovery. The delay was also caused by Defendant's acquiescence to the State's

requests for continuances and his own failure to obtain legal representation throughout the pendency of his case. In balancing the delay attributable to the State against the remaining months that are justified and ascribed to Defendant, we hold that this factor as a whole weighs only slightly against the State.

**3.      Defendant failed to assert his right to a speedy trial**

{**25**}      In analyzing whether Defendant asserted his right to a speedy trial, we "accord weight to the frequency and force of the defendant's objections to the delay . . . [and] also analyze the defendant's actions with regard to the delay." *Garza*, 2009-NMSC-038, ¶ 32 (internal quotation marks and citation omitted).

{**26**}      Defendant failed to assert his right to a speedy trial until four and one-half months after he was convicted. The district court therefore found that Defendant's assertion of the right was neither frequent nor forceful. We agree and hold that this factor weighs against Defendant.

**4.      Defendant did not suffer undue prejudice**

{**27**}      In analyzing the final *Barker* factor, we recognize that the criminal process inevitably causes anxiety for defendants, but we focus only on undue prejudice. *State v. Coffin*, 1999-NMSC-038, ¶ 68, 128 N.M. 192, 991 P.2d 477. Three interests are protected by the right to a speedy trial: "prevent[ing] oppressive pretrial

12

incarceration; . . . minimiz[ing] anxiety and concern of the accused; and . . . limit[ing] the possibility that the defense will be impaired." *Id.* (quoting *Barker*, 407 U.S. at 532). None of these interests were in peril in this case.

{28} Defendant was not incarcerated throughout the pendency of his case, he was able to maintain the same job, and he received support from his employer, even though the employer also employed the victim. Furthermore, in arguing that his defense was impaired, he failed to establish that the result of his retrial would have been different if there had been no delay.

{29} One assertion of prejudice on which the Court of Appeals focused was Defendant's relocation to Chaparral, New Mexico. *Castro*, 2016-NMCA-085, ¶¶ 42-43. We are not persuaded by this assertion of prejudice because the record shows that Defendant voluntarily moved to Chaparral for work, and since then he has had an "established home, family, and job" there. He lived in New Mexico on his own volition and not because of any limitations on his freedom.

{30} We also note that Defendant's failure to assert his right to a speedy trial indicates the minimal prejudice which he suffered since "[t]he more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 531. Additionally, Defendant may not have wanted a speedy trial. Defendant faced

immigration consequences as a result of the criminal proceedings against him, and therefore one plausible strategic reason for not aggressively pursuing his speedy trial right was the delay of immigration consequences. *Id.* at 534-35 (accounting for benefits to the defendant's case in waiting to be tried after his accomplice). The first jury trial ended in a hung jury with six jurors voting to find Defendant guilty of the charges. Considering the results of the first trial, would Defendant have frequently and forcefully asserted his right to a speedy retrial had he known a conviction would result in his deportation? Although Defendant alleges that Huerta did not counsel him about potential immigration consequences, the record does not contain any evidence that Defendant would have frequently and forcefully asserted his right to a speedy trial had he known that a conviction would result in his deportation.

{31}     Accordingly, on the record before us, Defendant failed to demonstrate undue prejudice beyond the usual anxiety and stress of the criminal process. There was no "actual and articulable deprivation" of Defendant's right to a speedy trial. *Garza*, 2009-NMSC-038, ¶ 12. We hold that this factor weighs against Defendant.

**5.     Balance of the *Barker* factors**

{32}     "To find a speedy trial violation [where Defendant has failed to show] actual prejudice, . . . the three other *Barker* factors [must] weigh heavily against the State."

*Samora*, 2016-NMSC-031, ¶ 23. While the delay of thirty-two months in retrying Defendant's case is presumptively prejudicial and weighs heavily against the State, the reasons for delay weigh only slightly against the State and Defendant failed to assert his right to a speedy trial, thereby causing that factor to weigh against him. Therefore, we hold that Defendant's right to a speedy trial was not violated.

**B.      There Is No Prima Facie Showing of Ineffective Assistance of Counsel**

{33}      In reviewing Defendant's argument that Huerta's failure to raise the speedy trial right was ineffective assistance of counsel, the Court of Appeals decided to remand the issue to the district court, instructing it to conduct an evidentiary hearing. *Castro*, 2016-NMCA-085, ¶ 53.  We disagree with this analysis.

{34}      "To establish ineffective assistance of counsel, a defendant must show:  (1) 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.' " *State v. Paredez*, 2004-NMSC-036, ¶ 13, 136 N.M. 533, 101 P.3d 799 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Defendant's assertion of this issue on appeal requires a detailed review of the record.

{35}      The district court did not consider the claim of ineffective assistance of counsel, and instead focused only on the grounds for a speedy trial.  Therefore, the only evidence in the record pertaining to this claim is Defendant's affidavit filed with

15

the district court describing Huerta's conduct and assertions that such conduct constituted ineffective assistance of counsel. Defendant also devoted a substantial part of his answer brief to discussing every instance in which Huerta's actions could have constituted ineffective assistance of counsel. However, we do not have Huerta's response to these contentions because he was not a party to this matter.

{36} Because there are insufficient facts in the record, Defendant's argument of ineffective assistance of counsel "is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.

{37} The Court of Appeals erroneously remanded this case to the district court for an evidentiary hearing. "[A] prima facie case is not made when a plausible, rational strategy or tactic can explain the conduct of defense counsel." *Paredez*, 2004-NMSC-036, ¶ 22 (internal quotation marks and citation omitted). Because Defendant's prejudice was minimal, it is plausible that Huerta failed to raise Defendant's right to a speedy trial either in accordance with a trial strategy or to delay Defendant's possible deportation. "Delay is not an uncommon defense tactic." *Barker*, 407 U.S. at 521. We therefore conclude that Defendant has not made a prima

16

facie case for ineffective assistance of counsel, and the proper avenue to bring this claim is a petition for habeas corpus under Rule 5-802 NMRA.

## III.   CONCLUSION

{38}    For the foregoing reasons, we reverse the Court of Appeals and affirm the district court's denial of Defendant's motion to dismiss based on speedy trial grounds. Our holding does not preclude Defendant from filing a petition for a claim of ineffective assistance of counsel.

{39}    **IT IS SO ORDERED.**


_____
                                   **EDWARD L. CHÁVEZ, Justice**


**WE CONCUR:**


_____
**JUDITH K. NAKAMURA, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**

_____

**CHARLES W. DANIELS, Justice**


_____

**BARBARA J. VIGIL, Justice**

18