This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41525**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**PEDRO CALVILLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Courtney Weaks, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Pedro Calvillo appeals his conviction of criminal sexual penetration of a minor (CSPM) in the first degree (child under thirteen years of age), contrary to NMSA 1978, Section 30-9-11(D)(1) (2007, amended 2009). On appeal, Defendant argues his right to a speedy trial was violated. We affirm.

**BACKGROUND**

**{2}**     The procedural history in this case is extensive. Defendant was arrested on July 16, 2008, and charged with three counts of CSPM (Counts 1-3). Between Defendant's arrest and the final trial on October 17, 2022, four trials were held, with the district court declaring two mistrials during that time. Defendant was convicted in the second trial and appealed to this Court in *State v. Calvillo* (*Calvillo I*), A-1-CA-33937, mem. op. (N.M. Ct. App. Dec. 6, 2017) (nonprecedential), arguing, in part, that the forty-seven months of delay between his arrest and second trial violated his right to a speedy trial. We reversed Defendant's conviction, but found no speedy trial violation, and remanded back to the district court. *Calvillo I*, A-1-CA-33937, mem. op. ¶¶ 37-38. Defendant was convicted of one count of CSPM (Count 1) at the fourth and final trial on October 17, 2022. Defendant now appeals.

**DISCUSSION**

**{3}**     In determining whether a defendant's right to a speedy trial was violated, we employ the four-factor balancing test articulated by the United States Supreme Court in *Barker v. Wingo*: (1) length of delay, (2) reasons for delay, (3) assertion of right, and (4) prejudice to the defendant. 407 U.S. 514, 530 (1972); *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. We weigh each factor for or against the state or the defendant and then we determine if, on balance, the defendant's right to a speedy trial was violated. *State v. Spearman*, 2012-NMSC-023, ¶ 17, 283 P.3d 272. In doing so, "[w]e defer to the district court's factual findings in considering a speedy trial claim, but weigh each factor de novo." *State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505. "[F]actual findings of a district court are entitled to substantial deference and will be reversed only for clear error." *State v. Gurule*, 2025-NMSC-010, ¶ 20, ___ P.3d ___ (S-1-SC-37879, Dec. 7, 2023) (internal quotation marks and citation omitted). "[W]hen a district court considers the *Barker* factors and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Id.* (internal quotation marks and citation omitted).

**I.     Length of Delay**

**{4}**     The first *Barker* factor functions as "both the threshold question in the speedy trial analysis and a factor to be weighed with the other three *Barker* factors." *Ochoa*, 2017-NMSC-031, ¶ 12. Particularly, whether the length of delay triggers an inquiry into the other three *Barker* factors depends on the complexity of the case. *See State v. Garza*, 2009-NMSC-038, ¶ 48, 146 N.M. 499, 212 P.3d 387. In New Mexico, the speedy trial inquiry triggers at "twelve months for simple cases, fifteen months for cases of intermediate complexity, and eighteen months for complex cases." *Id.* ¶ 2. Additionally, the length of delay is also itself a factor because, "[a]s the delay lengthens, it weighs increasingly in favor of the accused." *Ochoa*, 2017-NMSC-031, ¶ 14.

**{5}**     In its order denying Defendant's motion to dismiss on speedy trial grounds, the district court found that the length of delay weighed heavily against the State. We agree.

Both parties concede that the delay in this case surpasses the "presumptively prejudicial" threshold even for complex cases.

**{6}** The delay in this case was extraordinary: approximately 171 months or over fourteen years. Defendant was arrested on July 16, 2008, and his fourth and final trial did not take place until October 17, 2022.[1] Accordingly, we conclude that consideration of the remaining *Barker* factors is therefore triggered, *see Serros*, 2016-NMSC-008, ¶ 22, and agree with the district court that the delay weighs heavily against the State. *See State v. Taylor*, 2015-NMCA-012, ¶ 9, 343 P.3d 199 (reasoning that because the delay was nearly twice as long as the threshold, the factor weighed heavily against the state).

## II.    Reasons for Delay

**{7}** The reasons for delay "may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). "There are three types of delay that may be attributed to the [s]tate and are weighed against it in varying ways." *State v. Castro*, 2017-NMSC-027, ¶ 22, 402 P.3d 688. First, deliberate attempts by the state to delay the trial and hamper the defense weigh heavily against the state. *Id.* Second, "negligent or administrative delay should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the [State] rather than with the defendant." *Serros*, 2016-NMSC-008, ¶ 29 (omission, internal quotation marks, and citation omitted). And third, there are "appropriate" delays for which there is "a valid reason, such as a missing witness." *Id.* (internal quotation marks and citation omitted). These are delays, which are considered neutral and do not weigh against the state. *See id.* Finally, any delay caused by the defense weighs against the defendant. *See id.*

**{8}** We independently reweigh the reasons for delay. *See Spearman*, 2012-NMSC-023, ¶ 19 ("[W]e give deference to the district court's factual finding, but we review the weighing and balancing of the *Barker* factors de novo." (alterations, internal quotation marks, and citation omitted)). Due to multiple trials in this case, including two mistrials

---

[1] In examining the length of the delay and the reasons for delay, neither party grapples with the effect of Defendant's initial conviction in 2014, which ultimately was reversed on appeal in 2018 on the speedy trial analysis. Further, it is unclear from the district court's order whether that court included this period of time when considering the overall length of delay. Based on the United States Supreme Court and New Mexico precedent, it is questionable whether the period of time between Defendant's initial conviction in 2014 and the reversal of that conviction on appeal in 2018 factors into our speedy trial analysis at all. *See Betterman v. Montana*, 578 U.S. 437, 439, 441 (2016) (concluding that the Sixth Amendment speedy trial guarantee "protects the accused from arrest or indictment through trial, but does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges" and holding that "the right detaches upon conviction"); *State v. Castillo*, 2023-NMCA-063, ¶ 12, 535 P.3d 697 (relying on *Betterman* to hold that the period of time between when the defendant pleaded guilty and his guilty plea was vacated is not included in our speedy trial analysis). However, because the overall length of delay in this case, even excluding this four-year period, far exceeds the presumptively prejudicial period of delay for even complex cases, we agree with the district court that this factor weighs heavily against the State. We accordingly do not determine the effect of Defendant's initial conviction, which was reversed on appeal, on our speedy trial analysis.

and an appeal, the district court divided the delay into six periods spanning from Defendant's arrest on July 16, 2008, until his fourth and final trial on October 17, 2022. We address each period of delay in turn.

## A.    July 16, 2008 to June 18, 2012

**{9}**    Defendant was arrested on July 16, 2008, and his first trial did not occur until June 18, 2012. The delay within this time period was three years, eleven months and two days or approximately forty-seven months. The district court found that this period of delay did not weigh against the State, citing to this Court's holding in *Calvillo I* in which we weighed this period of delay neutrally because we concluded "very little of the delay in bringing this case to trial should be weighed against the State, and all other times weigh neutrally or against Defendant." *See* A-1-CA-33937, mem. op. ¶¶ 23-37.

**{10}**    Defendant appears to argue that the district court erred in analyzing this period of delay because, he asserts, the district court failed to consider periods within this time frame that individually weighed against the State in its analysis. We agree that the district court simply reached the same overarching conclusion as this Court did in *Calvillo I*, weighing this entire period neutrally even though some of the delay within that time frame did weigh slightly against the State. *See id.* ¶ 32. We decline to simply weigh this entire period neutrally as the district court did, because we review the reasons for delay in order to evaluate whether to "heighten or temper" the prejudice caused by the length of total delay. *See Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). To do that, we consider all of the reasons for all of the delay in light of the entire period of delay. In this case, that includes the reasons for delay—assigned in *Calvillo I*.

**{11}**    For the period between July 16, 2008 and June 18, 2012, this Court has already determined that of the total forty-seven months of delay, eight months weighed slightly against the State, twenty-four and one-half months were neutral, and fourteen months weighed against Defendant. *See Calvillo I*, A-1-CA-33937, mem. op. ¶¶ 24-31. These calculations adjust the *Calvillo I* analysis to account for our Supreme Court's recent determination in *Gurule* that the time spent determining a defendant's competency weighs against Defendant. *See Gurule*, 2025-NMSC-010, ¶ 27.

## B.    June 18, 2012 to March 14, 2014

**{12}**    Defendant's first trial was held on June 18, 2012. The district court ordered a mistrial on grounds of juror disagreement on June 28, 2012. The delay from June 28, 2012 to retrial on March 14, 2014, was approximately twenty and one-half months. The district court found that the delay during this time "appears to have been primarily the result of judge recusals and other administrative issues." Accordingly, the district court weighed this period only slightly against the State.

**{13}**    Neither Defendant's motion to dismiss in the district court nor his briefing to this Court addressed this period of delay. Furthermore, it is important to note that Defendant

failed to preserve any objection regarding this time frame, because he did not request that the district court weigh this period of delay against the State. *See* Rule 12-321(A) NMRA; *see also Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)). For these reasons, we cannot say that the district erred in weighing this period only slightly against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (noting delay caused by judge reassignment is considered administrative or negligent delay and weighs against the state accordingly).

## C.    March 14, 2014 to April 10, 2018

**{14}**    During this approximately forty-nine-month delay, Defendant appealed his conviction following his retrial and mandate was not issued until April 10, 2018. The district court declined to weigh this period against the State, relying on our Supreme Court's decision in *State v. McCrary*, 1984-NMSC-005, ¶ 17, 100 N.M. 671, 675 P.2d 120 (holding that a lapse in time due to an appeal "was justified and cannot be charged against [the s]tate.").

**{15}**    On appeal, Defendant appears to argue the district court erred in refusing to weigh this period against the State because he asserts, "The [State] denied [Defendant] a fair trial when [it] insisted on using illegally obtained evidence to get a conviction." Defendant does not elaborate further on whether this period of delay should be weighed slightly or heavily against the State, nor does he cite to any case law supporting such an argument.

**{16}**    Given Defendant's lack of developed legal argument regarding this period of delay on appeal, *see State v. Flores*, 2015-NMCA-002, ¶ 17, 340 P.3d 622 ("Our Court has been clear that it is the responsibility of the parties to set forth their developed arguments, it is not th[is C]ourt's responsibility to presume what they may have intended."), we cannot say the district court erred in weighing this factor neutrally.[2] *See McCray*, 1984-NMSC-005, ¶ 17 (holding that a lapse in time due to an appeal "was justified and cannot be charged against [the s]tate"); *State v. Suskiewich*, 2016-NMCA-004, ¶ 23, 363 P.3d 1247 ("We conclude that the five-month period during which the [s]tate's appeal was pending therefore does not weigh against either party."); *Cf. State v. Castillo*, 2023-NMCA-063, ¶ 12, 535 P.3d 697 (excluding time from the speedy trial analysis for the period between a plea and a successful habeas petition resulting in withdrawal of the plea and remand for trial).

---

2As we already have noted, whether the four-year period of time between Defendant's initial conviction and the reversal of that conviction on appeal factors into our speedy trial analysis at all is questionable. *See Betterman*, 578 U.S. at 439; *Castillo*, 2023-NMCA-063, ¶ 12. However, even if we were to exclude this entire four-year period when weighing the second *Barker* factor, this would not alter our conclusion that the reasons for delay on balance weigh in favor of Defendant. We accordingly do not determine the effect of Defendant's initial conviction, which was reversed on appeal, on our speedy trial analysis.

## D.  April 10, 2018 to May 17, 2019

**{17}**   Following this Court's mandate and remand to district court on April 10, 2018, a new trial was held on May 13, 2019. During this approximately thirteen-month period, both parties appeared to be preparing for trial. Accordingly, the district court declined to weigh this period of delay against either party, finding it was "within the presumptive period for an intermediately complex case" and "was not the result of negligence or administrative burdens." Defendant fails entirely to address this period of delay in his briefing. As such, we perceive no error in the district court's assessment that the delay was neutral. *See State v. Valencia*, 2010-NMCA-005, ¶ 18, 147 N.M. 432, 224 P.3d 659 (describing neutral delays as "periods of time considered inevitable and periods during which the case is moved toward trial with customary promptness" (internal quotation marks and citation omitted)). Accordingly, this period does not weigh against either party.

## E.  May 17, 2019 to September 19, 2020

**{18}**   Following the third trial, on May 17, 2019, the district court ordered a second mistrial as to Count 1 based on juror disagreement. The retrial was not scheduled until September 14, 2020. On May 17, 2020, in response to the public health emergency caused by COVID-19, our Supreme Court issued an order suspending all not-yet commenced criminal and civil trials.[3] In response, the district court filed an order continuing the trial setting for September 14, 2020.

**{19}**   The district court weighed this period slightly against the State, finding that it "was the result of administrative burdens on the [c]ourt." Defendant fails entirely to address this period of delay on appeal, and based on our review of the record, we cannot say the district court erred in weighing this period of delay slightly against the State.[4] Out of the fifteen months of delay during this period, fourteen of those months were the result of administrative delay, *see Serros*, 2016-NMSC-008, ¶ 29 (stating the ultimate responsibility for negligent or administrative delay "must rest with the [the State]"), and approximately one month was due to delays resulting from the COVID-19 pandemic. *See State v. Pate*, 2023-NMCA-088, ¶ 9, 538 P.3d 450 (declining to "categorically assign to either party the weight of delay caused by the suspension of

---

[3]Order, *In re Precautionary Measures for Court Operations in the New Mexico Judiciary During the COVID-19 Public Health Emergency*, No. 20-8500-002 (N.M. Mar. 17, 2020) at 3, https://supremecourt.nmcourts.gov/wp-content/uploads/sites/2/2024/03/Order-No.-20-8500-002-In-the-Matter-of-Precautionary-Measures-for-Court-Operations-in-the-New-Mexico-Judiciary-during-the-COVID-19-Public-Health-Emergency-3.17.20.pdf.

[4]We do note, however, that after the hung jury, the district court did not reschedule a retrial for sixteen months—this delay is significant. Retrials should receive priority on the district court's docket. *See, e.g., Castro*, 2017-NMSC-027, ¶ 21 ("Ordinarily the court should schedule the retrial as soon as its docket permits unless the parties justifiably require additional pre[]retrial discovery or motions practice. There is no question that the delay in retrying [the d]efendant was extraordinary and weighs heavily in favor of [the d]efendant.").

criminal jury trials due to the COVID-19 pandemic[,]" and instead holding that we must "consider the circumstances of the particular case").

## F.      September 14, 2020 to October 17, 2022

**{20}**    Due to COVID-19, Defendant's trial was not set until October 17, 2022. As such, the district court weighed this approximately twenty-five-month period neutrally. Given the absence of any argument from Defendant on this point, *see Flores*, 2015-NMCA-002, ¶ 17, we have no basis to disagree with the district court. *See id.* Accordingly, we do not weigh this period of delay against either party.

## G.      Reasons for Delay as a Whole

**{21}**    The district court ultimately declined to weigh the second *Barker* factor against the State. We disagree. Based on our review of the record, we hold that approximately forty-five months weigh slightly against the State, one hundred and thirteen months weigh neutrally and fourteen months weigh against Defendant. Accordingly, we weigh this factor against the State, although not heavily, and in doing so acknowledge the district court's finding that "[t]he majority of the delay in this case resulted from justifiable reasons not attributable to negligence or administrative causes, was delay acquiesced to or for the benefit of Defendant, or was delay resulting from trial preparations in the natural progression toward trial." *See Spearman*, 2012-NMSC-023, ¶ 19 ("[W]e give deference to the district court's factual findings, but we review the weighing and balancing of the *Barker* factors de novo." (alterations, internal quotation marks, and citation omitted)); *Gurule*, 2025-NMSC-010, ¶ 35 ("[W]e defer to the district court's findings of fact.").

## III.     Assertion of Right

**{22}**    We next turn to the third *Barker* factor, a defendant's assertion of the speedy trial right, and consider "[w]hether and how a defendant assert[ed their] right." *Barker*, 407 U.S. at 531. A "defendant's assertion of [their] speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* at 531-32. We "assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. "[W]e accord weight to the 'frequency and force' of the defendant's objections to the delay" and "analyze the defendant's actions with regard to the delay." *Id.* (internal quotation marks and citation omitted). We also consider whether the defendant "invoked his right to a speedy trial in words while simultaneously operating in a dilatory manner," because in those circumstances, "the defendant's assertions of the right were at best nominal and at worst an act of gamesmanship." *Gurule*, 2025-NMSC-010, ¶ 36 (internal quotation marks and citation omitted).

**{23}**    The district court weighed this factor slightly in Defendant's favor, finding that Defendant only asserted his right three times—twice in motions to dismiss filed

"approximately two weeks before trial was scheduled to begin" and once in a pro forma assertion in his counsel's entry of appearance.

**{24}** Defendant again fails to develop an argument explaining why this factor ought to weigh more heavily in his favor. It is well-settled that pro forma assertions, such as those made in the entry of appearance in this case, are sufficient to assert the right "but are given little weight in a defendant's favor." *See Ochoa*, 2017-NMSC-031, ¶ 41. Further, assertions made shortly before trial—like both of Defendant's motions to dismiss, which were filed approximately two weeks before trial was scheduled to begin—are accorded less weight. *See State v. O'Neal*, 2009-NMCA-020, ¶¶ 25-26, 145 N.M. 604, 203 P.3d 135 (determining that a defendant's assertion of their speedy trial rights twenty-two days before trial did not weigh in their favor). Defendant makes no legal argument regarding his demands for a speedy trial in his motions to dismiss.

**{25}** Based on our review of the record, Defendant's speedy trial demand in his first motion to dismiss was merely an assertion of his right to a speedy trial without any reference or analysis of the *Barker* factors. Defendant's speedy trial demand in his second motion to dismiss was more detailed but also filed shortly before trial. Given the length of time that elapsed with only three assertions of the right and Defendant's acquiescence to multiple continuances and delays, we cannot say the district court erred in weighing this factor only slightly in Defendant's favor. *See Gurule*, 2025-NMSC-010, ¶ 39.

## IV. Prejudice

**{26}** We now turn to the final *Barker* factor, which requires us to examine the prejudice to Defendant. *See Ochoa*, 2017-NMSC-031, ¶ 48. Because two *Barker* factors do not weigh heavily in Defendant's favor, he must show particularized prejudice in order to prove his right to a speedy trial was violated. *See State v. Wood*, 2022-NMCA-009, ¶ 21, 504 P.3d 579.

**{27}** In *Barker,* "[t]he United States Supreme Court . . . identified three interests under which we analyze prejudice to the defendant: (i) to prevent oppressive pretrial incarceration; (ii) to minimize the anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Garza*, 2009-NMSC-038, ¶ 35 (internal quotation marks and citation omitted). The district court concluded that Defendant failed to show that he was prejudiced by any of the three defense interests. We agree.

**{28}** On appeal, Defendant does not contend he suffered any impairment to his defense and instead focuses on the first and second types of prejudice. Specifically, Defendant asserts that he spent 1,753 days in pretrial incarceration and the other nine years "on various pretrial conditions," restricting his alcohol use, possession of firearms, and travel, caused him anxiety and concern. First regarding pretrial incarceration, Defendant did not argue to the district court, as he now does on appeal, that he was subject to oppressive pretrial incarceration by serving four years of the sentence resulting from his first conviction that was ultimately reversed on appeal. As a result, in

its order denying Defendant's motion to dismiss, the district court addressed the conditions of release, but not the notion that Defendant serving four years of his sentence is pretrial incarceration.

**{29}** We thus conclude that Defendant did not preserve the issue of whether the time he served pursuant to a judgment and sentence while his initial appeal was pending is considered pretrial incarceration for the purposes of speedy trial analysis; and we decline to consider the matter. *See* Rule 12-321(A).

**{30}** Second regarding anxiety and concern from pretrial conditions, in order to determine whether Defendant suffered prejudice due to anxiety or concern resulting from delay, we must determine whether the anxiety suffered is undue. *See Ochoa*, 2017-NMSC-031, ¶ 51 (explaining that "some degree of oppression and anxiety is inherent," and we therefore "weigh this factor in the defendant's favor only where the pretrial incarceration or anxiety suffered is undue" (internal quotation marks and citation omitted)). The district court found that Defendant made "only general assertions regarding undue stress" and that such assertions failed "to establish the undue anxiety and concern sufficient to establish prejudice from the delay." We agree.

**{31}** Before the district court, Defendant offered no proof, through oral or written testimony, of the anxiety and concern he experienced. On appeal, Defendant merely asserts that he experienced "[nine] years of out-of-custody pretrial anxiety and conditions" without further developing the argument or citing to a single relevant case. Although we may presume that Defendant suffered some degree of anxiety and concern as a result of the charge against him, *see Spearman*, 2012-NMSC-023, ¶¶ 36-37 (providing that "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility" (internal quotation marks and citation omitted)), under these circumstances and without some form of affirmative proof supporting Defendant's assertion of "pretrial anxiety," we decline to speculate regarding whether any resulting prejudice was undue or as a result of the lengthy delay. *See id.* ¶ 38; *State v. Radler*, 2019-NMCA-052, ¶ 22, 448 P.3d 613; *State v. Parrish*, 2011-NMCA-033, ¶ 32, 149 N.M. 506, 252 P.3d 730.

**{32}** Without more, we cannot say that Defendant has met his burden of showing particularized prejudice and we decline to weigh the fourth *Barker* factor against the State. *See Parrish*, 2011-NMCA-033, ¶ 32 ("[The d]efendant bears the burden of demonstrating and substantiating prejudice."); *Garza*, 2009-NMSC-038, ¶ 35 ("[W]e will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers.").

## V. Balancing the *Barker* Factors

**{33}** Although we do not condone the overall delay in this case, in light of the record and the arguments before us, we affirm the district court and conclude that Defendant's right to a speedy trial was not violated because Defendant failed to show particularized

prejudice and only one of the other three *Barker* factors weighs heavily in his favor. *See State v. Samora*, 2016-NMSC-031, ¶ 23, 387 P.3d 230 ("To find a speedy trial violation without a showing of actual prejudice, the Court must find that the three other *Barker* factors weigh heavily against the [s]tate.").

**CONCLUSION**

**{34}** For the foregoing reasons, we affirm.

**{35}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**KATHERINE A. WRAY, Judge**